UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| TAMARA DARVAL et al., <br><br>        Plaintiffs, <br><br>  v. <br><br> TIG INSURANCE COMPANY et al., <br><br>        Defendants. | CASE NO. 3:22-cv-05100-DGE <br><br> ORDER ADOPTING REPORT AND RECOMMENDATION (DKT. NO. 119) |

Before the Court are the Parties' respective objections (Dkt. Nos. 120, 121) to the Report and Recommendation ("R&R") (Dkt. No. 119) issued by United States Magistrate Judge Theresa L. Fricke. The R&R recommends Plaintiffs' motion for partial summary judgment (Dkt. No. 91) be DENIED, recommends Defendant's motion for summary judgment (Dkt. No. 93) be GRANTED, and otherwise recommends DISMISSAL of all claims.

**I    BACKGROUND**

The Court refers to Judge Fricke's R&R for a more comprehensive recitation of the facts. (Dkt. No. 119 at 2–6.)  To summarize, this is an insurance coverage dispute brought by

Plaintiffs, as assignees of Highmark Homes, LLC ("Highmark"). Highmark was the developer and general contractor of houses constructed at the Sylvan Way development located in Kitsap County, Washington. Defendant TIG Insurance Company ("TIG"), through its predecessor, issued to Highmark three consecutive general liability insurance policies covering the period between July 17, 2010 and July 17, 2013. A different insurer, the International Insurance Company of Hanover ("Hannover"), issued to Highmark general commercial liability policies covering the period between July 17, 2012 and July 17, 2015.

TIG's insurance policies contain a Tract Housing Exclusion that excludes coverage for damages related to "any housing project or development that includes the construction, repair, or remodel of twenty-five (25) or more residential buildings by our insured in any or all phases of the project or development." (Dkt. No. 95-5 at 9.) The policies only cover damages occurring during the respective policy period of each policy. (Dkt. No. 95-1 at 44.)

Plaintiffs allege TIG breached its duties to defend and indemnify Highmark from claims arising out of the defective construction of the Plaintiffs' houses. Plaintiffs bring claims for declaratory relief, breach of contract, violation of the Washington Administrative Code, violation of the Washington Consumer Protection Act ("CPA"), bad faith, negligent misrepresentation, negligence, and estoppel. (Dkt. No. 1-1 at 29–45.) The R&R recommends summary judgment dismissal of all of Plaintiffs' claims. Each party filed an objection to the R&R.[1]

---

[1] Plaintiffs, without leave of the Court, filed a 41-page objection that far exceeds the word limit mandated by Local Civil Rule 72. Some of the arguments and assertions in the objection are difficult to follow. TIG asks the Court to strike the overlength objection. (Dkt. No. 123 at 1–2.) Pursuant to Local Civil Rule 7(e)(6), the Court will not address every possible argument Plaintiffs may have raised in Plaintiffs' overlength objection. Notwithstanding, the Court has endeavored to address what appear to be the key arguments in Plaintiffs' objection.

## II   LEGAL AUTHORITY

A district court reviews de novo "those portions of the report or specified proposed findings or recommendations to which [an] objection is made." 28 U.S.C. § 636(b)(1)(C); *see also* Fed. R. Civ. P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."). Objections to an R&R must be "specific." Fed. R. Civ. P. 72(b)(2). Mere incorporation of arguments from the underlying motions, without identifying "what portions of the R&R" the objecting party "considers to be incorrect," does not constitute a specific objection, *Amaro v. Ryan*, 2012 WL 12702, at *1 (D. Ariz. Jan. 4, 2012), and therefore does not give rise to a court's obligation to conduct a de novo review, *Brandon v. Dep't of Corr.*, 2021 WL 5937685, at *1 (W.D. Wash. Dec. 16, 2021). "In the absence of a specific objection, the [C]ourt need only satisfy itself that there is no 'clear error' on the face of the record before adopting the magistrate judge's recommendation." *Venson v. Jackson*, 2019 WL 1531271, at *1 (S.D. Cal. April 8, 2019).

Moreover, a district court need not consider arguments raised for the first time in an objection to a magistrate judge's recommendation. *United States v. Howell*, 231 F.3d 615, 622 (9th Cir. 2000) ("To require a district court to consider evidence not previously presented to the magistrate judge would effectively nullify the magistrate judge's consideration of the matter and would not help to relieve the workload of the district court."); *see also Martin v. Wash. State Dept. of Corrections*, No. 20-00311-LK, 2023 WL 3902363, *6 (W.D. Wash. May 1, 2023) ("the Court has discretion whether to consider arguments made for the first time in objections"); *Ewalan v. Wash. State Dept. of Corrections*, No. 20-05678-JLR, 2021 WL 5824381, *6 n.8 (W.D. Wash. Dec. 8, 2021) ("The court does not, however, consider new arguments or new evidence raised for the first time through an objection to the report and recommendation.").

III     DISCUSSION

**A. Breach of Contract and Bad Faith Claims**

    1. <u>Duty to Indemnify</u>

Judge Fricke concluded TIG did not owe a duty to indemnify Highmark because the Sylvan Way development involved the construction of at least 30 houses, thereby subjecting it to the Tract Housing Exclusion. (Dkt. No. 119 at 10.) Judge Fricke also concluded the property damages complained of occurred after the TIG policy periods expired, making the policies inapplicable to the Plaintiffs' claims. (*Id*. at 11.)

Plaintiffs do not contest that the plain terms of the Tract Housing Exclusion apply to the Sylvan Way development as such development involved the construction of more than 25 houses. (*See generally* Dkt. No. 120.) Instead, they argue for the first time in their objection that in any given TIG policy period less than 25 houses were constructed. (*Id.* at 4) ("Highmark ***did not*** construct twenty-five houses in ***one*** policy period"). According to Plaintiffs, this means each policy's Tract Housing Exclusion is invalid because each exclusion relies on "occurrences outside of its policy period without a connection to the policy period in which coverage is being denied." (*Id*.) To support this position, Plaintiffs invest several pages attempting to establish that the Tract Housing Exclusion violates Washington law and public policy because the exclusion relies on events (*i.e.* the completion of additional houses) outside of each specific policy period to trigger the exclusion. (*See id*. at 3–6, 32–41.)

First, Plaintiffs' argument is rejected because it is raised for the first time in objection to Judge Fricke's report and recommendation. *See Howell*, 231 F.3d at 622. Second, there is no dispute the Sylvan Way development involved the construction of more than 25 houses and that based on the plain terms of the exclusion, the Sylvan Way development is "Tract Housing"

subject to the exclusion.  (*See* Dkt. No. 95-5 at 9) ("'Tract housing' . . . means any housing project or development that includes the construction . . . of twenty-five (25) or more residential buildings . . . in any or all phases of the project or development.").  Third, the Court is not inclined to attempt to connect all the labyrinthine dots Plaintiffs attempt to lay out in their objection necessary to reach the result Plaintiffs seek.  (*See* Dkt. No. 120 at 3–6, 32–41.)

Even if the Tract Housing Exclusion were deemed invalid, Plaintiffs fail to address Judge Fricke's second finding that the "property damage occurred after the TIG policy periods expired" (Dkt. No. 119 at 11), making the policies inapplicable.  (*See generally* Dkt. No. 120.)  Plaintiffs do not identify any facts from the record calling into question Judge Fricke's finding.  Thus, independent from the Tract Housing Exclusion, summary judgment should be granted because Plaintiffs fail to identify damages occurring during TIG's policy periods.

Accordingly, the Court finds and concludes, just as Judge Fricke did, that Plaintiffs' breach of contract and bad faith claims based on an alleged breach of a duty to indemnify should be DISMISSED on summary judgment.

### 2. Duty to Defend

Judge Fricke found Plaintiffs' breach of contract claim for duty to defend and their claim for a bad faith investigation fail because "TIG did not deny [Highmark] a defense" and that any delay in accepting Highmark's tender of defense did not result in Highmark suffering any damages.  (Dkt. No. 119 at 13, 16.)  As to the specific claim that TIG's delay in accepting the tender of defense resulted in Highmark "burning" its coverage limits under Highmark's

Hannover policies, Judge Fricke identified that Plaintiffs admitted Hannover was reimbursed "for the funds depleted from the burning policy limits." (*Id.*[2])

In their objection, Plaintiffs attempt to identify damages by claiming that the Hannover policy limits "were depleted by $4,591.21 or $2,295.610 ($4,591.21/2) more than Hannover policy limits would have been depleted if TIG had fulfilled its duty to defend when required." (Dkt. No. 120 at 1.) But Plaintiffs fail to identify or sufficiently explain how they reached these conclusions as the only citation in support of these figures is an invoice proving fees were charged, but not who paid the fees. (*Id.*) Moreover, Plaintiffs do not explain why they previously admitted Hannover had been completely reimbursed.

Plaintiffs also argue TIG "burned" the Hannover policy limits when TIG retained defense counsel separate from the defense counsel Hannover had retained. This, according to Plaintiffs, required Hannover to pay more for defense costs once TIG stopped contributing towards fees charged by Hannover's assigned defense counsel, thereby further eroding Hannover's policy limits. (*See id.* at 22.) But Plaintiffs provide no authority for the proposition that TIG was prohibited from hiring its own defense counsel of choice. Instead, Plaintiffs assert the decision to retain different counsel "was ***unreasonable*** and done in TIG's interests without considering Highmark's interests." (*Id.*) They argue in conclusory fashion that TIG's retained defense counsel did not adequately defend Highmark and otherwise sought to protect TIG's interests over Highmark's interests. (*Id.* at 22–26.) To support this contention, they claim the defense counsel TIG retained was inexperienced and communicated "confidential and privileged information" to TIG. (*Id.* at 23.) However, Plaintiffs' citation to various documents in the

---

[2] Plaintiffs' motion for summary judgment stated, "In August 2018, ARCH Insurance accepted Highmark's tender of defense months late. ARCH reimbursed Hannover, so the funds depleted from the burning limits policy were reimbursed." (Dkt. No. 91 at 6.)

ORDER ADOPTING REPORT AND RECOMMENDATION (DKT. NO. 119) - 6

record without an explanation as to how those records prove TIG's conduct harmed Highmark is insufficient to raise questions of disputed facts about. (*See id.*[3])

In short, "[a] showing of harm is an essential element of an action for bad faith handling of an insurance claim." *Safeco Ins. Co. of America v. Butler*, 823 P.2d 499, 389 (Wash. 1992); *see also Ledcor Industries (USA), Inc. v. Mutual of Enumclaw Ins. Co.*, 206 P.3d 1255, 1261 (Wash. Ct. App. 2009) ("As Ledcor ultimately suffered no harm resulting from [the insurer's] breach of its duties, the court did not err in awarding no damages for bad faith."). Plaintiffs have failed to show how TIG's defense of the Plaintiffs' claims harmed Highmark.

As such, Plaintiffs' breach of contract and bad faith claims based on the duty to defend should be DISMISSED on summary judgment.

**B.  Plaintiffs' Remaining Claims**

For all intents and purposes, all other claims flow from Plaintiffs' claims that TIG failed to defend and indemnify Highmark. Moreover, Plaintiffs' objection does not address Judge Fricke's findings and conclusion regarding the remaining claims.

**C.  TIG's Objection to the R&R (Dkt. No. 121)**

TIG's objection asserts the R&R did not address Plaintiffs' Insurance Fair Conduct Act (IFCA) claim. However, Plaintiffs' complaint does not assert an independent IFCA claim. Instead, Plaintiffs incorporate alleged IFCA violations as part of Plaintiffs' CPA and Bad Faith claims (*see* Dkt. 1-1 at 37, 40), which the R&R did recommend dismissing. Because any claim for damages under IFCA requires a finding that an insurer unreasonably denied a claim for

---

[3] One of Plaintiffs' bullet points summarizing TIG's alleged improper conduct states: "TIG informed the Homeowners at mediation that Hannover had a burning limits policy on all four cases." (*Id*. at 26.) It is unclear why this information was confidential or privileged as presumably all parties exchanged information about the insurance policies at issue. It also is unclear how TIG harmed Highmark by disclosing such information to Plaintiffs.

coverage or benefits, Washington Revised Code § 48.30.015, and because the Court agrees with the R&R that TIG did not breach its duty to defend or indemnify, any IFCA claim fails as a matter of law.

## IV    CONCLUSION

The Court having reviewed Plaintiffs' objection (Dkt. No. 120), Defendant's Objection (Dkt. No. 121), the R&R (Dkt. No. 119), the parties' cross-motions for summary judgment (Dkt. Nos. 91, 93), and the remaining record. The Court ADOPTS in full Judge Fricke's R&R, and ORDERS as follows:

1. Plaintiffs' partial motion for summary judgment (Dkt. No. 91) is DENIED;
2. TIG's motion for summary judgment (Dkt. No. 93) is GRANTED; and
3. All claims filed in this action are hereby DISMISSED.

Dated this 10th day of June, 2025.

David G. Estudillo
United States District Judge